**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROSA BELLOCCO, On Behalf of
Herself and all Others Similarly
Situated,
              Plaintiff(s),
   v.                                  Case No.: 8:02-CV-1141-T-27TBM
                                           Whittemore, J.
HOWARD R. CURD, ROBERT L. SORAN,
and GEORGE J. ZULANAS, JR.,

              Defendants.
_____/

MARIO A. SABATES,
        Plaintiff,

v.                                     Case No. 8:04-CV-824-T26MSS
                                           Lazzara, J.
HOWARD R. CURD, HOWARD F. CURD,
EILEEN S. CURD, JESUP & LAMONT
SECURITIES CORPORATION, and
KC MAY SECURITIES
CORPORATION,
        Defendants.
_____/

FELICIANO S. SABATES and
CAROLYN P. SABATES,
        Plaintiffs,
v.                                     Case No. 8:04-CV-824-T26MSS
                                           Lazzara, J.
HOWARD R. CURD, HOWARD F. CURD,
EILEEN S. CURD, JESUP & LAMONT
SECURITIES CORPORATION, and
KC MAY SECURITIES
CORPORATION,
        Defendants.
_____/

**DEFENDANTS HOWARD R. CURD AND
KC MAY SECURITIES CORPORATION'S RESPONSE
THE SABATES PLAINTIFFS' REQUEST
FOR ORDER TO SHOW CAUSE RE: SANCTIONS**

Howard R. Curd ("Curd Sr."), a defendant in *Bellocco* and *Sabates*, and KC May Securities Corporation ("KC May," Curd Sr. and KC May are collectively referred to as "Defendants"), a defendant in *Sabates*, submits this response to the Sabates Plaintiffs' request that the Court issue an Order to Show Cause why Defendants should not be sanctioned.[1]

**FACTUAL BACKGROUND**

The Sabates Plaintiffs commenced this action in April 2004. In June 2004, after Curd Sr. filed his motion to dismiss, the Court, by Judge Lazzara, dismissed the complaints *sua sponte*. The parties then entered settlement discussions, which were unsuccessful. On or about November 12, 2004, the Sabates Plaintiffs filed their Amended Complaints. In January 2005, Curd Sr. moved to dismiss the Amended Complaints, and that motion was denied on March 1, 2005. In January 2005, Plaintiffs sought to reinstate claims against KC May, which had been stayed pursuant to an arbitration agreement. KC May opposed reinstatement. KC May sought to compel arbitration, relying on controlling Eleventh Circuit precedent, or stay the action against pending arbitration of identical claims against related parties. (*Sabates* Docket No. 50) On February 11, 2005, Judge Lazzara denied KC May's motion to compel arbitration. (<u>Id.</u> No. 58) Pursuant to Court order, KC May filed its motion to dismiss on

---

[1] Although the Local Rule of the Middle District do not permit reply papers, the Sabates Plaintiffs have sought affirmative relief in the form of an Order to Show Cause. Defendants submit this paper in opposition to that request.

March 4, 2005. The Motion was denied on March 8, 2005. (Id. No. 70) Curd Sr. filed his answers to the amended complaint on March 18, 2005, and KC May filed its answers on March 25, 2005. (Id. Nos. 75 and 76)

When Judge Lazzara denied Curd Sr.'s Motion to Dismiss, he struck, without comment, the Sabates Plaintiffs' purported incorporation by reference of the substantive allegations from the *Bellocco* complaint. As the parties negotiated the Case Management Report, they disagreed on the effect of this ruling.[2] After receiving clarification of Judge Lazzara's March 1, 2005 Order, the parties filed the case management report on March 31, 2005. On April 29, 2005, the Sabates Plaintiffs served broad discovery requests, seeking discovery on all of the *Bellocco* issues.

## ARGUMENT

### 1. Plaintiffs' Request For Sanctions Is Procedurally Defective.

Rule 11 of the Federal Rules of Civil Procedures sets for unambiguous procedures for a party seeking sanctions. Fed. R. Civ. P. Rule 11(c)(1)(a). It provides that a party may initiate a request for sanctions by motion, and that the motion "shall be made separately from

---

[2] Defendants believed that by striking the *Bellocco* allegations, those allegations were no longer relevant to *Sabates*. In his order on clarification, Judge Lazzara agreed with Defendants that the Sabates Plaintiffs "should have re-pleaded all allegations from the Bellocco complaint deemed pertinent to the instant action into the Amended Complaints." (Opp. Ex. 3 at 2) Judge Lazzara stated that by striking the Sabates Plaintiffs' purported incorporation of the *Bellocco* complaint, he "did not intend to dismiss any of Plaintiffs' substantive claims or any allegations which were actually pleaded by Plaintiffs in the amended complaints." (Id. (emphasis added)) Although Judge Lazzara acknowledged that the Sabates Plaintiffs did not actually re-plead any of the substantive allegations of *Bellocco*, he still granted their motion to clarify, apparently permitting them to take discovery on all of the *Bellocco* allegations. For this reason, the Bellocco Plaintiffs' Opposition to Consolidation (("*Bellocco* Opp."), *Bellocco* Docket No. 91), which relies on Defendants' representations in response to Plaintiffs' Motion to Clarify, is misplaced. Although Defendants' argued that *Bellocco* was

other motions or requests." Id. It provides further that the motion "shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper . . . is not withdrawn or appropriately corrected." Id. Although the Sabates Plaintiffs styled their motion as a request for an Order to Show Cause, it is clear that their Opposition to Consolidation is, in fact, a thinly veiled Rule 11 motion.

The Sabates Plaintiffs did not properly serve a motion for sanctions prior to filing their request for an Order to Show Cause. Instead, as they admit, they only sent a "warning" letter. Cases have uniformly held that the notice provisions of Rule 11 are not satisfied by sending a warning letter. *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1028-29 (8th Cir. 2003) (safe harbor provision is not satisfied by sending a warning letter); *Kirk-Murphy*, 313 B.R. at 921; *Weeks Stevedoring Co., Inc. v. Raymond Int'l Builders*, 174 F.R.D. 301, 305 (S.D.N.Y. 1997) (warning letter does not meet the strict procedural requirements of Rule 11 where letter is sent instead of serving a motion); *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) (sanctions warning letters do not meet Rule 11's procedural requirements); *TRI, Inc. v. Boise Cascade Office Prod. Inc.*, 2002 WL 31108190, *2 (D. Minn. 2002) ("This court and others have repeatedly rejected the argument that warning letters . . . trigger the start of the safe harbor period.").

In addition, the Sabates Plaintiffs failed to seek Rule 11 sanctions in a separate motion. Instead, they included their request as part of their Opposition to Consolidation.

---

stricken from the *Sabates* Action (*see Bellocco* Opp. at 1, 19), Judge Lazzara held that *Bellocco* was, in fact, still part of *Sabates*.

3

This is procedurally defective. *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151-52 (7th Cir. 1996) (vacating order for sanctions for failure to comply with separate-motion requirement); *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132 (2d Cir. 2002) (award of sanctions was abuse of discretion where motion was not made separately from other motions and was not served prior to filing with court).

The Sabates Plaintiffs are trying to skirt the procedural requirements by cloaking their motion for sanctions as a request for an Order to Show Cause. Nothing in Rule 11 authorizes this end-around the rules. *Kaplan v. Daimlerchrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (Rule 11 provides two procedures, a party-initiated motion, or a *sua sponte* Order to Show Cause by the court). To the contrary, Rule 11 only authorizes a party to seek sanctions pursuant to a separate motion, served 21 days prior to filing. The procedural difference between a party motion and the Court's *sua sponte* initiative is material. If the Court issues an Order to Show Cause, the respondent does not have a 21-day safe harbor to withdraw the subject pleading. Fed. R. Civ. P. Rule 11(c)(1)(B). Moreover, a Court should only issue and Order to Shaw Cause under circumstances rising to civil contempt. *Kaplan*, 331 F.3d at 1255 (court initiated sanctions must meet "a higher standard ("akin to contempt"); *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90-91 (2d Cir. 2003). The "contempt" standard cannot met here. Because Plaintiffs' request for an Order to Show Cause is not authorized by Rule 11, it should be denied for this reason alone.

  2. <u>**Defendants Have Not Acted In Bad Faith**</u>.

The Sabates Plaintiffs' request for sanctions is substantively without merit. It is based on gross mischaracterizations of their own claims, misrepresentations of prior orders,

and a gratuitous interpretation of Defendants' motive. From the outset of this litigation Defendants have informed the Sabates Plaintiffs that they would seek consolidation in the event the Sabates Plaintiffs sought to initiate independent discovery on the overlapping *Bellocco* issues. Defendants waited to file the Motion to Consolidate because the Motion to Dismiss remained pending in *Bellocco*. Defendants hoped the *Bellocco* Motion to Dismiss would be decided, which would either open the door for consolidation, or render the question moot. In addition, because Defendants only seek consolidation for purposes of discovery, they waited until the pleadings in *Sabates* were closed in the event Defendants Motions to Dismiss resulted in the elimination of the *Bellocco* allegations from this action. As the Sabates Plaintiffs acknowledge, Defendants did not learn until March 31, 2005, when Judge Lazzara clarified his March 1, 2005 Order, that the *Bellocco* allegations remained within the scope of discovery in *Sabates*. Defendants filed the Motion to Consolidate one month later.

Defendants did not file their Motion for Consolidation in bad faith. Nor did they file the motion for purposes of delay or to engage in "judge-shopping." Defendants filed the motion to avoid duplicative discovery to prevent undue burden and costs to themselves and numerous non-parties. The Sabates Plaintiffs do not deny that independent discovery in *Bellocco* and *Sabates*, will, in fact, cause undue burden to the parties and witnesses. Instead, they choose to ignore it. They also acknowledge, as do the Bellocco Plaintiffs, that "coordinated" discovery between *Sabates* and *Bellocco* is reasonable. (*Sabates* Opp. at 11 n.7; *Bellocco* Opp. at 19) Whether the Plaintiffs prefer to call it "coordination" rather than "consolidation" is semantic. The result is the same – the discovery in the two action should proceed together in order to prevent duplication.

5

3.   **The Significant Overlap Between *Bellocco* And *Sabates* Compels Consolidation Of The Actions For Purposes Of Discovery And Demonstrates That Defendants Acted In Good Faith.**

The Sabates Plaintiffs ignore the fact that consolidation is appropriate where two actions have common questions of law and fact. Fed. R. Civ. P. 42(a). The Sabates Plaintiffs filed a Notice of Pendency of Related Actions, thereby admitting that *Bellocco* and *Sabates* share common questions of law and fact. (*Sabates* Docket No. 2) That alone is sufficient to justify consolidation for purposes of discovery and demonstrate that Defendants had an objectively good faith basis in filing this motion.

In an attempt to avoid the impact of their admission, the Sabates Plaintiffs take great pains to mischaracterize their claims against Defendants. But the fact is that the Sabates' complaints contain a complete overlap the substantive allegations in *Bellocco*, whether alleged in detail or in summary form. (*Sabates* Opp. at 4) The Sabates Plaintiffs allege that Curd Sr. and others failed to disclose production problems at Uniroyal. That is exactly the same claim as in *Bellocco*. Whereas *Bellocco* alleges that the production problems were hidden from the market, the Sabates Plaintiffs allege that Curd Sr. and Eileen Curd failed to disclose the production problems both to the market and to themselves in private conversations. (*Sabates* Opp. at 9-10) In order to prove these claims, the Sabates Plaintiffs and the Bellocco Plaintiffs must prove the exact same underlying facts – that Uniroyal was suffering production problems that should have been disclosed to investors. The Sabates Plaintiffs cannot prove that Curd Sr. and Eileen made material representations unless they prove the same underlying facts that the Bellocco Plaintiffs must prove. All of the discovery relevant to the *Bellocco* claims, therefore, will have to be taken in *Sabates*.

The Sabates Plaintiffs' attempt to distinguish the actions misses the point. The fact that Curd Sr. is the only common defendant in the two actions is irrelevant to whether the discovery in the two cases will be duplicative. (*Sabates* Opp. at 4) Nor is it relevant that the Sabates Plaintiffs' allegations of the *Bellocco* action appear only in summary form in the Sabates' complaints. (Id.) Nor is it relevant that the Sabates Plaintiffs have alleged a far-fetched and baseless conspiracy among the Curd family. (*Sabates* Opp. at 4-5) What is relevant is that the Sabates Plaintiffs have sought and will continue to seek in the *Sabates* action complete discovery on all of the issues in the *Bellocco* complaint. The Sabates Plaintiffs chose to ignore this fact in their Opposition, but it is determinative here.

The Sabates Plaintiffs also attempt to distinguish their action from *Bellocco* by claiming that they have not asserted a "fraud on the market" claim. (*Sabates* Opp. at 5) This is a deliberate misrepresentation of their claims.[3] Although the Sabates Plaintiffs are not suing on behalf of the market, they seek to rely on the same "fraud on the market" theory of reliance as does *Bellocco*. Count III of the Sabates amended complaints asserts a claim for market manipulation against Curd Sr. and KC May that is based solely on the fraud on the market theory. Count III alleges that Curd Sr. manipulated the market for Uniroyal shares by making false and misleading statements "as set forth above and in the [*Bellocco*] Complaint." (*Sabates* Docket No. 49 ¶ 67 (emphasis added)) That is not only a fraud on the market claim, it is the exact same fraud on the market claim alleged in *Bellocco*.[4] The Sabates Plaintiffs later allege that when they purchased their shares they "reasonably relied

---

[3] It is ironic that in requesting sanctions against Defendants, the Sabates Plaintiffs have made such an obvious misrepresentation to the Court.

on the integrity of the market for Uniroyal stock."  (Id. ¶ 69)  As the Bellocco Plaintiffs acknowledge, this is the hallmark of a fraud on the market claim.  (*See Bellocco* Opp. at 14 (citing *Lipton v. Documation, Inc.*, 734 F.2d 740, 745 (11th Cir. 1984))

Count III also asserts that Curd Sr.'s son, Howard F. Curd ("Curd Jr.") and KC May manipulated the market for Uniroyal by virtue of certain wash trades and research reports. (*Sabates* Opp. at 5-8)  The Sabates Plaintiffs do not allege that they were aware of the alleged trades or relied on the research reports when they purchased their Uniroyal shares.  Those allegations, therefore, would be relevant only if they pleaded a fraud on the market claim, whether alleged as a direct claim against Curd Jr., or a conspiracy claim against Curd Sr.  As explained by the Bellocco Plaintiffs, the Sabates Plaintiffs would have to "prove that the price of Uniroyal stock was artificially inflated by reason of [the alleged wash trades and research reports], as well as the amount of inflation in determining their damages."  (*Bellocco* Opp. at 16)  That is a fraud on the market claim.

However, this is the second time the Sabates Plaintiffs have admitted in papers filed with the Court that they are not asserting a fraud on the market claim.  (*See* Plaintiffs' Opposition to Howard R. Curd's Motion to Dismiss at 10 ("[*Sabates*] is not a 'fraud on the market' case"); *Sabates* Docket No. 63.)  By making these unambiguous judicial admissions, the Sabates Plaintiffs have abandoned Count III and are no longer asserting a fraud on the market claim in *Sabates*.  *Lofton v. Kearney*, 157 F.Supp.2d 1372, 1375 (S.D. Fla. 2001) ("[A]dmissions in pleading are deemed judicial admission[s], binding on the party who

---

[4] The Bellocco Plaintiffs' belief that Count III is based solely on "*private* statements made to the Sabates family members" is incorrect. (*Bellocco* Opp. at 14)

makes them."). The factual overlap *Bellocco* and *Sabates*, therefore, is greater. All of the allegations regarding Curd Jr., including the alleged wash trades and fraudulent research reports, were relevant only to the Sabates Plaintiffs' fraud on the market claim. Those allegations are now out of the case. The Sabates Plaintiffs' claims are now limited to the allegations that Curd Sr. and Eileen's direct statements to them were false and misleading. The facts pleaded to support that claim are the exact same facts pleaded to support the *Bellocco* allegations that Curd Sr. defrauded the market. In other words, the reason the Sabates Plaintiffs believe they were defrauded is the exact same reason the Bellocco class believes it was defrauded – because Curd Sr. and others allegedly failed to disclose negative information about the growth and business prospects of Uniroyal. The factual overlap is now complete.

   **4.**  **The Sabates Plaintiffs' Outstanding Discovery Is Entirely Duplicative Of *Bellocco*, Demonstrating the Objectively Good Faith Basis For Defendants' Motion.**

To understand the extent of the overlap between *Sabates* and *Bellocco*, the Court does not have to look further than the discovery served by the Sabates Plaintiffs on Curd Sr. and KC May.[5] The discovery seeks information and documents relating to every allegation in *Bellocco*. (*See Bellocco* Opp. at 5-7) For example, the Sabates Plaintiffs have requested from Curd Sr. "[a]ll documents reflecting or relating to [Uniroyal]" (*See* Ex. A, Request No. 5), and "[a]ll documents related to communications by you to the growth and business prospects of UOL and/or Uniroyal's Optoelectronics and Semiconductor Division." (*See* Ex.

---

[5] Copies of Plaintiffs' discovery to Curd Sr. are attached hereto as Exhibits A & B.

9

A, Request No. 25.)  Those requests directly mirror the *Bellocco* allegations.  The Interrogatories also ask Curd Sr. to identify, among other things, "all facts supporting or refuting [Curd Sr.'s] representations regarding the growth and business prospects of [Uniroyal]." (*See* Ex. B, Interrogatory No. 17.)  This, too, seeks information on the entirety of the *Bellocco* complaint.

The Sabates Plaintiffs have also begun non-party discovery.  They purported to serve subpoenas on Robert Soran and George Zulanas – the two other individual defendants in *Bellocco*.[6]  Those subpoenas seek documents and testimony regarding all of the *Bellocco* issues.  For example, Document Request No. 1 requests all documents "that support or refute the claims or defenses of any party in the action styled <u>Bellocco v. Curd</u>." (Exs. E & F, Request No. 1 (emphasis added))  Given that the Sabates Plaintiffs have expressly sought all documents relevant to *Bellocco,* it is inconceivable that they could represent to this Court that there is only minimal overlap between the two cases.  That one document request demonstrates that if Soran and Zulanas are forced to produce documents and provide testimony as non-parties in *Sabates*, it is likely that they will have to repeat the exact discovery in *Bellocco*.  Plaintiffs also ignore the fact that they have identified numerous past and present employees of Emcore Corporation and Sterling Semiconductor, Inc. as potential deponents.  If those non-parties are deposed in *Sabates*, they may have to be deposed again in *Bellocco*.

### 5. The Sabates Plaintiffs' Request Misrepresents Prior Orders Of the Court.

The Sabates Plaintiffs also misrepresent the prior Orders of Judge Kovachevich and Judge Lazzara. On May 5, 2004, Judge Kovachevich transferred Feliciano and Carolyn Sabates' complaint to Judge Lazzara. (*Sabates* Opp. at 3) The transfer order did not discuss consolidation. The Sabates Plaintiffs, however, assert that by this order, "[Judge Kovachevich and Judge Lazzara] had already considered the proper assignment of their cases and *Bellocco*, and determined that their cases should be consolidated before Judge Lazzara and not consolidated with *Bellocco*." (*Sabates* Opp. at 3.)

The Sabates Plaintiffs offer no explanation for their claimed insight into the decision-making process of the Judges and, apparently, it is creative writing. Needless to say, the transfer order does not suggest that Judge Kovachevich or Judge Lazzara discussed the issue of consolidation at all. Moreover, the Sabates Plaintiffs are, yet again, wrong when they assert that the May 2005 transfer order consolidated their actions before Judge Lazzara. The Sabates actions were not consolidated until June 2005. (Docket No. 9.) The fact that the transfer order did not consolidate the two Sabates complaints strongly suggests that Judge Kovachevich and Judge Lazzara did not consider or rule upon the question of whether the *Sabates* actions should be consolidated, either with each other or with *Bellocco*. The transfer order is irrelevant to this motion.

The Sabates Plaintiffs also overstate Judge Lazarra's order on their Motion for Clarification. (*Sabates* Opp. at 13) Defendants' response to the Sabates Plaintiffs' Motion

---

[6] Copies of Plaintiffs' subpoenas to Soran and Zulanas are attached hereto as Exhibits C& D.

11

for Clarification was not, itself, a motion to consolidate. Instead, the response reserved the right to seek consolidation and requested that Judge Lazzara stay discovery in *Sabates* until that motion was filed and decided. (*Sabates* Docket No. 78)  Judge Lazzara denied the request for a stay, but did not address the issue of consolidation. Contrary to the Sabates Plaintiffs' assertions, this motion, therefore, is not a second bite "at the consolidation apple." (*Sabates* Opp. at 13)

Finally, the Sabates Plaintiffs again claim insight into Judge Lazzara's thought-process when they assert that he "indicated his willingness to retain the *Sabates* cases by denying the present motion, without prejudice to this Court's ruling." (*Sabates* Opp. at 18) Again, Judge Lazzara's denial of the present motion did not indicate anything about his willingness to retain the *Sabates* actions. Rather, it is more likely that he denied the motion for the obvious reason that, pursuant to Local Rule 1.04(b), the motion is to be heard by this Court.[7]

### 6. The Sabates Plaintiffs' Claim of Prejudice Is Unfounded.

The Sabates Plaintiffs' claim of prejudice is unfounded. (*Sabates* Opp. at 16-17) Contrary to their assertion, the parties did not spend "hours" negotiating the Case Management Report. (*Sabates* Opp. at 16)  They had a few telephone conversations and exchanged two drafts before reaching agreement. The effort the Sabates Plaintiffs have allegedly undertaken preparing for discovery – purportedly "tens of thousands of dollars" – is

---

[7] The Sabates Plaintiffs' argument that Defendants' Motion for Consolidation is inconsistent with the Motion to Dismiss filed in *Bellocco* makes no sense. (*Sabates* Opp. at 15)  The *Bellocco* Motion to Dismiss is meritorious and should be granted. However, the Motion may be denied. Given that possibility, Defendants and numerous non-parties should not be faced with the prospect of duplicative discovery.

...

...

not wasted. The same discovery can be served as part of the consolidated (or coordinated) discovery with the Bellocco Plaintiffs. Nor would consolidation result in undue delay. The Sabates filed their complaints in April 2004, and the complaints were designated as Track III. The Local Rules provide that Track III cases should go to trial within three years of filing – April 2007, almost two years from now.[8] Any delay caused by consolidation of discovery would not be undue or prejudicial. The delay is certainly not sufficient to outweigh the immense expense and inconvenience the Sabates Plaintiffs are trying to force upon Defendants and numerous non-parties.

Finally, the Sabates Plaintiffs include yet another irrelevant and groundless attack on Defendants, accusing them of "refusing to appear for properly noticed depositions and [] indicating that they will likewise refuse to produce documents properly requested by Plaintiffs." (*Sabates* Opp. at 19) In fact, the Sabates Plaintiffs noticed Curd Sr. and KC May's depositions for May 31, 2005 and June 1, 2005, respectively, without first inquiring as to whether Curd Sr. or KC May were available on those dates. Defendants promptly informed the Sabates Plaintiffs that their counsel could not appear on the chosen dates because one would be out of the country and another would be on trial in another matter. (*See* Correspondence between David J. Stone to Ross A. Albert, dated May 9, 2005, May 12, 2005 and May 17, 2005, attached hereto as Exhibits E, F & G) The Sabates Plaintiffs refused the basic courtesy of rescheduling the dates for the depositions. (*See* Ex. F)[9]

---

[8] We note that the *Bellocco* action was filed in 2002 and has not proceeded beyond Rule 12 motions, yet the Bellocco Plaintiffs agree that coordinated discovery is reasonable.

[9] The Sabates Plaintiffs took the position that because the parties' Case Management Report set May 31, 2005 as the first date for depositions, all parties agreed that they would be available for deposition

Moreover, Defendants have not indicated that they will refuse to produce properly requested documents, and the Sabates Plaintiffs' accusation is, again, a fiction. Rather, Defendants informed the Sabates Plaintiffs that Defendants' responses to the Sabates Plaintiffs' interrogatories and document requests were not due to be served until the date set for KC May's deposition and, therefore, *after* the date set for Curd Sr.'s deposition. Defendants pointed out that the Sabates Plaintiffs were seeking to depose Curd Sr. and KC May prior to the receipt of any discovery or documents.[10] (*See* Exhibit G)  Defendants, of course, will respond fully to the Sabates Plaintiffs' written discovery.[11]

## CONCLUSION

Defendants' Motion for Consolidation was not filed for an improper purpose. It seeks consolidation of discovery – not the entire actions. The motion was filed to avoid the extreme costs and burdens of potentially duplicative discovery in the two actions. The Sabates Plaintiffs' opposition largely ignores this determinative fact and, instead, relies on insults, *ad hominim* attacks, and misrepresentations of its own claims. The Sabates

---

on that date. This argument is preposterous. The Sabates Plaintiffs never asked, and Defendants never indicated that, in fact, they or their counsel would be available on May 31, 2005.

[10] That the Sabates Plaintiffs want to depose Curd Sr. and KC May prior to obtaining any written discovery suggests that the Sabates Plaintiffs are more interested in harassment than actual discovery.
[11] In another of the Sabates Plaintiffs' more creative works of fiction, they assert that the transaction by which KC May sold its assets to Broadmark Capital Corporation as "highly suspicious," claiming that [l]egitimate businesses in the securities industries do not slink off in the dead of night." (Opp. 5 n.3)  The Sabates Plaintiffs, of course, have no evidence to support this scandalous accusation, and the relevant transaction was legitimate. Indeed, Defendants were informed that New Jesup notified the Sabates Plaintiffs (and all customers) of the change in ownership by mail. The Sabates Plaintiffs also assert that the NASD "would almost certainly have brought an enforcement action against KC May" if KC May had not gone out of business." This is also idle speculation. These are just two additional examples of the Sabates Plaintiffs' willingness to make accusations without any factual basis.

Plaintiffs' request for an Order to Show Cause why Defendants should not be sanctioned should be denied, and the Motion to Consolidate should be granted.

Dated: May 26, 2005

GREENBERG TRAURIG, LLP

By: _____/s/ Ronald D. Lefton____
Ronald D. Lefton
Admitted for both actions
MetLife Building
200 Park Avenue, 15th Floor
New York, NY 10166
Tel: 212-801-9200
Fax: 212-801-6400

- and -

GREENBERG TRAURIG, P.A.
Tucker H. Byrd
Florida Bar No. 381632
450 South Orange Avenue
Suite 650
Orlando, Florida 32801
Tel: (407) 420-1000
Fax: (407) 420-5909

**Attorneys for DEFENDANTS HOWARD R. CURD AND KC MAY SECURITIES CORPORATION**

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 26th day of May, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

**Ross A. Albert, Esq.**
Counsel for Plaintiffs Mario A. Sabates,
Felix S. Sabates and Carolyn P. Sabates

**Robert R. Hearn, Esq., and Joshua R. Heller, Esq.**
Counsel for Plaintiff Mario A. Sabates,
Felix S. Sabates and Carolyn P. Sabates

I also hereby certify that that true and correct copies of the have been furnished by Federal Express, overnight delivery, to lead Plaintiffs' counsel in the *Bellocco* Action, Bernstein Leibhard & Lifshitz, LLP and Barker, Rodems & Cook, and by U.S. mail to all other counsel at their respective addresses listed on the attached service list, this 26th day of May, 2005.

/s/ Ronald D. Lefton
GREENBERG TRAURIG, LLP
Admitted in this both actions
MetLife Building
200 Park Avenue, 15th Floor
New York, NY 10166
(212) 801-9200

## BELLOCCO ACTION SERVICE LIST

Jeffrey M. Haber, Esq.
Felicia Stern, Esq.
Bernstein Leibhard & Lifshitz, LLP
10 E. 40th Street
22nd Floor
New York, NY 10016

Andrew Schatz, Esq.
Wayne T. Boulton, Esq.
Schatz & Nobel, P.C.
330 Main Street
Hartford, CT 06106-1851

John G. Emerson, Esq.
The Emerson Firm
1509 Louisiana, Suite C & D
Little Rock, AR 72202-5094

Kenneth J. Vinale, Esq.
Tara Isaacson, Esq.
Milberg Weiss Bershad, et al.
5355 Town Center Road, Suite 900
Boca Raton, FL 33486

Paul J. Geller, Esq.
Howard R. Coates, Esq.
Jack Reise, Esq.
Cauley, Geller Bowman & Coates, LLP
2255 Glades Road, Suite 421A
Boca Raton, FL 33431

Curtis V. Trinko, Esq.
Law Offices of Curtis V. Trinko
16 W. 46th Street, 7th Floor
New York, NY 10036

Elizabeth Shattuck Finberg, Esq.
Cohen Milstein Hausfeld, et al.
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005-3965

Charles J. Piven, Esq.
Law Offices of Charles J. Piven, P.A.
World Trade Center, Suite 2525
401 E. Pratt Street
Baltimore, MD 21202

Chris Barker, Esq.
Barker, Rodems & Cook
300 W. Platt Street, Suite 150
Tampa, FL 33606

Marc A. Topaz, Esq.
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Robert I. Harwood, Esq.
Jeffrey M. Norton, Esq.
Frederick W. Gerkens, III, Esq.
Wechsler, Harwood, Halebian, et al.
488 Madison Avenue, 8th Floor
New York, NY 10022

John R. Bush, Esq.
Ross Gardner Warren & Rudy, P.A.
220 South Franklin Street
P.O. Box 3913
Tampa, FL 33601-3913