UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROSA BELLOCCO, on behalf of
herself and all others similarly
situated,

                Plaintiff(s),

vs.                                            Case No. 8:02-CV-1141-T-27TBM

HOWARD R. CURD, ROBERT L.
SORAN, and GEORGE J. ZULANAS, JR.,

                Defendant(s).
_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation ("R&R") submitted by Magistrate Judge Thomas B. McCoun (Dkt. 67) recommending that Defendants' motion to dismiss (Dkt. 54) be granted in part and denied in part.[1] Defendants have filed an objection to the R&R (Dkt. 71). Plaintiffs have filed a response to Defendants' objections (Dkt. 72).

---

[1] Plaintiffs' class action complaint alleges that during the class period Defendants knowingly made or caused to be made numerous materially false and misleading statements designed to condition the market to believe that the joint venture between Uniroyal and Emcore was proceeding as planned and that Sterling was a valuable addition to Uniroyal. Plaintiffs allege Defendants acted in violation of section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (Count I) and that Defendants acted as controlling persons of Uniroyal within the meaning of section 20(a) of the Exchange Act and by reason of their authority caused Uniroyal to engage in the wrongful conduct alleged in Count I (Count II). (Dkt. 43).

      The Magistrate Judge recommends Defendants' motion be granted with respect to Plaintiffs' time-barred claim based on the RBX Note and with respect to legally insufficient claims based on the St. Petersburg Times article, the Jesup & Lamont reports and comments made by William Kennedy appearing in a June 8, 2000 press release. (Dkt. 67). The Magistrate Judge recommends Defendants' motion be denied in all other respects, including Defendants' contention that Plaintiffs' section 20(a) claim fails.

1

This Court may "accept, reject or modify in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). After an independent review of the record, the Magistrate Judge's R&R is adopted, confirmed and approved in all respects.

### Defendants' Objections

1. <u>Plaintiffs' claims pertaining to Uniroyal's statements about commercial production of HB-LEDs and alleged misrepresentations concerning Sterling</u>

In their objection to the R&R, Defendants contend Plaintiffs' claims pertaining to Uniroyal's statements about commercial production of HB-LEDs and alleged misstatements concerning Sterling Semiconductor, Inc. are time barred. Defendants agree that the Magistrate Judge correctly concluded that a one-year period of limitations applies to Plaintiffs' claims and that the limitations period is "triggered by evidence of the possibility of fraud, not full exposition of the scam itself." (Dkt. 71, p. 2) (citations omitted).

Defendants' re-argue that any alleged misstatements concerning the capacity for and the timing of commercial production by Uniroyal Optoelectronics business segment were "completely and effectively dispelled by [Uniroyal's] disclosures in its Form S-3/A that it filed with the Securities and Exchange Commission on July 13, 2000, almost two years before Plaintiffs brought this action." (Dkt. 71, p. 3). Defendants also contend that any misinformation concerning production had been clarified in 2000, via the WitSoundView analyst report, which reported that the LED production ramp was "running slower than we had anticipated". (Avery Complaint, ¶ 49). Defendants argue that any misinformation regarding Sterling's value was clarified when Sterling's financial condition was fully disclosed in Uniroyal's June 14, 2000 8-K filing and the 8-K/A amendment filed on August 15, 2000. (Dkt. 71, p. 5). Defendants argue that these disclosures put the plaintiffs in the

*Avery* case (the former Sterling shareholders) on notice and therefore the same information is sufficient to put the instant Plaintiffs on notice.[2] (Dkt. 71, p. 4).

This Court disagrees with Defendants' argument and adopts the reasoning and conclusion of the Magistrate Judge. Defendants provide no authority for imputing notice to the instant Plaintiffs based on the facts referenced in the *Avery* Complaint. As the Magistrate Judge points out, the Plaintiffs in this case allege wrongdoing not alleged in the *Avery* complaint. More importantly, the Magistrate Judge correctly concluded that Defendants' disclosures in the Form S-3/A, the WitSoundView report and the 8-K/A filings do not, in and of themselves, place Plaintiffs on inquiry or actual notice of the alleged fraud associated with the joint venture and the Sterling acquisition.

Plaintiffs' claims, as alleged, center around the allegation that Defendants conditioned the market to believe that together, Uniroyal and Sterling had the expertise and financial ability to become a major player in the compound semiconductor arena and that Defendants continued to falsely tout production success and represent an inflated value of Sterling as late as 2002. (Dkt. 43, ¶¶ 137-39, 141). Defendants' disclosures, among others, that commercial production was "delayed" and that the effort was "running slower" than expected and that Sterling had a negative working capital, accumulated deficit, and experienced losses from operations, were insufficient to put Plaintiffs on notice of the alleged fraud. When the alleged disclosures are viewed in conjunction with Defendants' "corporate optimism", this Court cannot conclude that Plaintiffs should have been

---

[2] Pending before this Court is *Avery et al. v. Uniroyal, et al.*, case no: 8:02-CV-2238-T-27MAP, wherein the former shareholders of Sterling Semiconductor, Inc. (who exchanged their Sterling shares for restricted common stock of Uniroyal pursuant to a private merger) allege class action claims for violations of §§ 11, 12(1)(a)(2) &15 of the Securities Act of 1933 and §§ 10(b)(5) and 20(a) of the Securities Exchange Act of 1934. Plaintiffs' claims for violations of §§ 11, 12, and 15 were dismissed. Therefore, the *Avery* case is proceeding on Plaintiffs' claims under §§ 10(b)5 and 20(a).

on inquiry or that they had actual notice of fraud. Accordingly, this Court agrees with the Magistrate Judge that Defendants have not met their burden of establishing that Plaintiffs were on notice of the alleged fraud as early as June, July or August 2000.

2. <u>Defendants' alleged misstatements are not mere "puffery"</u>

"Statements classified as 'corporate optimism' or 'mere puffing' are typically forward-looking statements, or objective verification. Vague, optimistic statements are not actionable because reasonable investors do no rely on them in making investment decisions." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 119-20 (10th Cir. 1997). Defendants contend many of the alleged misstatements are nothing more than puffery and therefore, are not actionable. In footnote 7 of Defendants' objection to the R&R, Defendants list the portions of Plaintiffs' allegations they contend qualify as corporate optimism. (Dkt. 71, p.7 n. 7).

While aspects of the alleged misstatements contain elements of corporate optimism, this Court cannot conclude, at this stage of the litigation, that Defendants' assurances regarding Uniroyal's progress in developing and producing HB-LED products were clearly immaterial to investors. When the comments Defendants contend are mere puffery are read in context and in conjunction with Plaintiffs' other allegations, the Court cannot conclude that the alleged misstatements are merely general predictions and not material as a matter of law. For example, in paragraph 67, Plaintiffs allege Defendants generally touted that "[t]he market is strong and our objective is to be a major player in this industry." However, according to Plaintiff, Defendants also stated in that regard that Uniroyal "recently began shipping HB-LEDs to a major customer." In paragraph 93, Plaintiffs allege Defendants made general predictions that the company has "made significant progress". However, Plaintiffs also allege that Defendants stated that they "added highly

4

respected research scientists and reactor capacity for [its] Optoelectronics business and . . . are quickly expanding the capabilities of Sterling for the production of silicon carbid wafers . . ." According to Plaintiffs, Defendants stated that in connection with "rapidly ramping up production", the "addition of R&D group has been instrumental to product advancements . . ." and that "brightness levels we are currently demonstrating provide Uniroyal the opportunity to be the leader in the high brightness LED market."

According to Plaintiffs, these statements were materially false and misleading because Uniroyal was incapable of commercial production of HB-LEDs. (Dkt. 43, ¶ 114). Similarly, Defendants' alleged comment that it "had achieved exceptional brightness levels with its high brightness red light emitting diode (HB-LED) products" was false, as Defendants allegedly knew they had problems developing high brightness red LEDs. The Magistrate Judge correctly noted in footnote 12 of the R&R that materiality is not typically resolved at the motion to dismiss stage unless the misrepresentations are "so obviously unimportant to an investor that reasonable minds cannot differ." (Dkt. 67, p. 32, n.12) (citing *In re Hamilton Bankcorp. Inc. Sec. Litig.*, 194 F.Supp.2d 1353 (S.D. Fla. 2002)). Because Uniroyal's ability to develop HB-LED products was critical to its success, Defendants assurances regarding the development and production of these products cannot be deemed immaterial as a matter of law at this stage of the proceedings. Accordingly, the Court cannot conclude that these statements are so vague, exaggerated or unspecific that a reasonable investor would not rely on them.

3.  Uniroyal's Cautionary Statements

Defendants argue that the Magistrate Judge incorrectly concluded that dismissal based on the safe harbor provision or "bespeaks caution" doctrine is inappropriate. Specifically, the Magistrate

5

Judge concluded that Defendants failed to demonstrate that their cautionary statements were adequate to render immaterial the alleged misstatements and omissions in Defendants' forward-looking statements and that this issue was better resolved upon a motion for summary judgment. (Dkt. 67, p. 32). Contrary to Defendants' assertion, the Magistrate Judge is correct.

The "'bespeaks caution' doctrine protects statements in the nature of projections that are accompanied by meaningful cautionary statements and specific warnings of the risks involved, so as to 'bespeak caution' to investors that actual results may differ, thereby shielding the statements from § 10(b) and Rule 10b-5 liability." *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276, n. 7 (11th Cir. 1999) (citing *Saltzberg v. TM Sterling/Austin Assoc.*, 45 F.3d 399 (11th Cir. 1995)). The cautionary language should not be "boilerplate" or "buried among too many other things", but rather, should be "explicit, repetitive and linked to the projections about which the plaintiff complains." *See Saltzberg*, 45 F.3d at 400. Similarly, under the Reform Act's safe harbor provision, "statements in the nature of economic forecasts . . . are considered 'forward-looking' and may garner . . . protection . . . if: (1) they are identified as forward looking statements and are accompanied by the appropriate cautionary language; (2) if such statements are immaterial, or (3) if the plaintiff fails to prove that the statements were made with actual knowledge of their falsity." *Bryant*, 187 F.3d at 1276, n. 7.

At this stage of the proceedings, Defendants have failed to demonstrate that their cautionary language were adequate to render immaterial the alleged misstatements and omissions in the forward looking statements. Even in their objection to the R&R, Defendants fail to sufficiently identify the cautionary language they rely on and fail to sufficiently link a cautionary statement to the projection about which Plaintiffs complain. The Magistrate Judge correctly concluded that Defendants have,

at best, raised a genuine issue of fact as to the materiality of their forward-looking statements in light of the cautionary statements made in the SEC filings. Accordingly, dismissal on this ground is not appropriate.

    4.    <u>Plaintiffs' fraud claim based on Generally Accepted Accounting Principles ("GAAP" violations</u>

Defendants contend the Magistrate Judge incorrectly concluded that Plaintiffs sufficiently alleged their fraud claims arising from GAAP violations. Specifically, Defendants reargue that Plaintiffs failed to satisfy the particularity requirements of Rule 9(b) and failed to properly plead scienter for these claims.

Defendants correctly argue that allegations of GAAP violations, standing alone, do not satisfy the particularity requirement of Rule 9(b). "Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim". *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1208 (11th Cir. 2001) (citing *Chill v. Gen Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996)). Here, however, Plaintiffs adequately set forth that Defendants' statements were materially false or misleading and that the circumstances alleged give rise to a strong inference that Defendants' omissions or misrepresentations were not mere negligence, but were rather an extreme departure from the ordinary standards of care, which Defendants knew or should have known presented a danger of misleading the market.

For example, Plaintiffs allege that Defendants failed to write down obsolete and unsaleable inventory in compliance with the GAAP and that virtually all of the Division's inventory produced by the joint venture was "worthless, 'would not function' and was 'totally unsaleable.'" Yet, in the Company's financial statements, Defendants "failed to recognize the worthlessness of [the

Divisions's] inventory and failed to make the write-down, which was required to properly state such inventory at the lower of cost or market value in compliance with GAAP." Plaintiffs allege that "[b]y failing to write down the inventory to the lower of cost or market value through a charge to earnings during the Class Period, Uniroyal's financial statements reflected grossly overstated assets, income, and net worth." (Dkt. 43, ¶¶ 158 - 160). These allegations sufficiently, albeit minimally, set forth Plaintiffs' claim with particularity. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. The Report and Recommendation (Dkt. 67) is adopted, confirmed and approved in all respects and is made a part of this order for all purposes, including appellate review.

2. Defendants' motion to dismiss (Dkt. 54) is GRANTED with respect to Plaintiffs' time-barred claim based on the RBX Note and with respect to legally insufficient claims based on the St. Petersburg Times article, the Jesup & Lamont reports and comments made by William Kennedy appearing in a June 8, 2000 press release. Defendants' motion is denied in all other respects.

**DONE AND ORDERED** in chambers this __20__ day of October, 2005.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record