UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ROSA BELLOCCO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOWARD R. CURD, ROBERT L. SORAN, and GEORGE J. ZULANAS, JR.,<br><br>Defendants. | Civil Action No.: 8:02-CV-1141-T-27TBM |

**LEAD PLAINTIFFS' RENEWED MOTION, AND MEMORANDUM IN SUPPORT OF RENEWED MOTION, FOR APPROVAL OF CLAIMS ADMINISTRATION PROCESS, APPROVAL AND PAYMENT OF CLAIMS ADMINISTRATOR'S INVOICE, AND APPROVAL OF DISTRIBUTION OF SETTLEMENT FUND TO THE CLASS**

Lead Plaintiffs, Fuller & Thaler Asset Management and Dwight Tracy, through their counsel, bring this motion for entry of a Class Distribution Order and aver as follows:

1. By an Order and Final Judgment dated April 5, 2006, the Court approved the proposed Settlement and Plan of Allocation as fair, reasonable and adequate and in the best interests of the Class.

2. In accordance with the Notice sent to the Class members, all Class members wishing to participate in the Net Settlement Fund were required to complete a Court-approved Proof of Claim and Release ("Proof of Claim") form and to mail the Proof of Claim to the post office box identified in the Notice, which was maintained by the Claims Administrator, The Garden City Group, Inc. ("GCG").

8875v1

3. GCG administered the Settlement, and performed all analyses and accounting procedures in connection with the claims filed, and is ready to effectuate distribution of the Net Settlement Fund.

4. Of the claims that were rejected by GCG, only one person contested GCG's determination – Helen O. Bauman. GCG rejected Ms. Bauman's claim because she acquired her Uniroyal Technology Corporation ("Uniroyal") shares through a stock split. Ms. Bauman has requested judicial review of GCG's determination.

## MEMORANDUM OF LAW

### I. INTRODUCTION

Lead Plaintiffs, Fuller & Thaler Asset Management and Dwight Tracy ("Plaintiffs"), through their Court-appointed Lead Counsel, Bernstein Liebhard & Lifshitz, LLP, respectfully move this Court for an order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (i) approving the administrative determinations of The Garden City Group, Inc. ("GCG"), the Claims Administrator, accepting and rejecting claims submitted herein, including the rejection of the claim submitted by Helen O. Bauman, who has requested this Court's review of the rejection of her claim; (ii) directing payment of $166,822.29 out of the Settlement Fund to GCG for the balance of its fees and expenses incurred and to be incurred in connection with services performed and to be performed with respect to the administration of the Settlement Fund; (iii) directing distribution of the Net Settlement Fund, after deduction of the payments requested herein, to Class Members whose proof of claim forms have been accepted; (iv) authorizing destruction of paper copies of Proofs of Claim one year after distribution of the Net Settlement Fund, and authorizing destruction of electronic copies of claim records three years after distribution of the Net Settlement Fund; and (v) for such other and further relief as this Court deems appropriate.

Plaintiffs' Lead Counsel file the within motion pursuant to paragraph 12 of the Stipulation and Agreement of Settlement dated November 22, 2005 (the "Stipulation"), which requires Plaintiffs' Lead Counsel to apply to the Court, on notice to Defendants' Counsel, for an order (the "Class Distribution Order") approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of claims submitted herein and approving any fees and expenses not previously applied for, including the fees and expenses of the Clams Administrator, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants.

On November 22, 2005, Lead Plaintiffs and Defendants Howard R. Curd, Robert L. Soran, and George J. Zulanas, Jr.,[1] entered into the Stipulation. The Stipulation provided for the settlement of this action on behalf of a Class consisting of all persons who purchased or otherwise acquired Uniroyal common stock between February 8, 2000 through and including May 13, 2002 ("the Class Period"), and who were damaged thereby.

The Notice of Pendency and Settlement of Class Action, Hearing on Proposed Settlement and Attorney's Fees and Right to Share in Settlement Fund (the "Notice") and Proof of Claim and Release form (the "Proof of Claim") were mailed to all Class Members pursuant to the Preliminary Approval Order dated January 13, 2006 (the "Preliminary Approval Order").

On March 30, 2006, the Court held a final hearing to consider the proposed Settlement. On April 5, 2006, the Court signed the Order and Final Judgment ("Final Judgment"), which approved the proposed Settlement as fair, reasonable, and adequate, and dismissed this action as against Defendants, and directed the parties to consummate the Stipulation in accordance with its terms and provisions.

---

[1] Uniroyal Technology Corporation ("Uniroyal") was named in the action as a defendant. However, Uniroyal declared bankruptcy during the pendency of the action, thereby staying all proceedings against Uniroyal under Section 362 of the Bankruptcy Code.

Pursuant to the Preliminary Approval Order, Plaintiffs' Lead Counsel retained GCG, a firm specializing in the administration of class action settlements with its main office located in Melville, New York, to print and mail copies of the Notice and Proof of Claim to the members of the Class, to process the Proofs of Claim submitted by Class Members, to prepare the tax returns for the Settlement Fund, and to effectuate distribution of the Net Settlement Fund to the Class Members who submitted acceptable Proofs of Claim.

On January 17, 2007, Plaintiffs moved for, among other things, approval of the claims administration process, approval and payment of GCG's fees and expenses incurred and to be incurred in connection with services performed and to be performed with respect to the administration of the Settlement Fund, approval of distribution of the Settlement Fund to the Class, and approval of the administrative determinations of GCG, including the rejection of the claim submitted by Helen O. Bauman, who has requested this Court's review of the rejection of her claim.

On March 5, 2007, the Court denied Plaintiffs' motion without prejudice and set a hearing date of April 5, 2007 for Ms. Bauman's request for court review of her claim. Although not specifically stated in the Court's Order, Plaintiffs believe that the primary, if not sole, issue for consideration at the hearing is the denial of Ms. Bauman's claim.

## II.     CLAIMS ADMINISTRATION

Under the terms of the Stipulation, a $2,650,000 Settlement Fund was established for the settlement of the class claims asserted against Defendants. Pursuant to the Stipulation and the Notice, all Class Members wishing to participate in the Settlement Fund were required to submit Proofs of Claim by mail, postmarked on or before June 28, 2006. As demonstrated by the Affidavit of Shandarese Garr in Support of Motion to Distribute Settlement Funds (the "Garr Aff."), which is attached as Ex. 1 to the supporting Declaration of Jeffrey M. Haber ("Haber Decl.") filed herewith, GCG received and reviewed all submitted claims. To the extent that a

4

claim was deficient in any regard, GCG, under the supervision of Plaintiffs' Lead Counsel, mailed a Final Notice of Disposition letter to the claimant advising him, her, or it of the deficiency and requested the proper documentation to cure the deficiency. To the extent that the documentation submitted with the claim showed the claim was ineligible to participate in the Net Settlement Fund, GCG, under the supervision of Plaintiffs' Lead Counsel, mailed a Final Notice of Ineligibility letter to the claimant. Final Notice of Ineligibility letters were also sent to claimants who submitted duplicate claims. Both the Final Notice of Disposition and Final Notice of Ineligibility letters explained the reason(s) for the rejection and specifically stated that the claimant had the right to contest the rejection and request the Court's review of GCG's administrative determination to reject the claim. Copies of the Final Notice of Disposition and Final Notice of Ineligibility letters are attached as Exhibit A to the Garr Affidavit. *See* Garr Aff. ¶ 9.

Pursuant to paragraph 19(e) of the Stipulation, all rejection letters specifically provided that a claimant had the right, within twenty days after the mailing of the Notice, to contest the rejection and request a hearing before the Court. One claimant, Helen O. Bauman (Claim No. 01000066), has requested this Court's review of the rejection of her claims. *See* Garr Aff. ¶ 10; *see also* III below.

## III.   REQUEST FOR COURT REVIEW

As noted, only one claimant has contested the administrative determinations of GCG – Helen O. Bauman (Claim No. 01000066). *See* Garr Aff. ¶ 10; *see also* Exhibit B thereto (attaching copies of the rejected claim along with supporting documentation and written correspondence between GCG and Ms. Bauman).

Ms. Bauman's claim was rejected by GCG because she is not a member of the Class. As stated in the Notice disseminated to the Class, individuals are entitled to share in the Settlement proceeds only if they are members of the Settlement Class, *i.e.*, if they purchased or otherwise

5

acquired Uniroyal common stock during the Class Period and were damaged thereby. Ms. Bauman did not purchase her shares during the Class Period and incurred no damages as a result of the shares received from the stock split.

Ms. Bauman acquired her original shares of Uniroyal common stock on February 17, 1993, well before the Class Period. *See* Garr Aff. Ex. B (stock certificate dated February 17, 1993). Those shares became the subject of a 2 for 1 stock split on April 5, 2000, when Uniroyal informed Ms. Bauman that the Company was conducting a 2 for 1 stock split. *See* Ex. 2 to Haber Decl. (press release announcing the stock split in the form of a 100% dividend) and Garr Aff. Ex. B (April 5, 2000 letter from Uniroyal General Counsel Oliver J. Janney announcing split and stating that split was being conducted to "bring the trading price of the shares to a level which is likely to be more attractive, while giving you the same percentage of the total shares outstanding as you had before…"). As a result, Ms. Bauman received 498 shares of Uniroyal stock.[2] It is the receipt of the 498 shares upon which Ms. Bauman bases her claim.[3] *See also* Garr Aff. Ex. B (Ms. Bauman's Proof of Claim).

It is well settled that only plaintiffs who are "purchasers" or "sellers" of securities are entitled to bring action under Section 10(b) of the Exchange Act. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975). Receiving stock as a result of a stock split is not a purchase or sale of securities under the federal securities laws. A stock split is nothing more than an internal restructuring of a corporation with no material change in ownership interests or

---

[2] Ms. Bauman claims that she paid $3.94 per share for the 498 shares received in the stock split. However, the $3.94 per share figure represents the fair market value of the 498 shares that she received in February 1993. *See id.* (March 28, 1994 letter from Uniroyal to Ms. Bauman).

[3] Ms. Bauman was sent a final notice of ineligibility on July 14, 2006, which she acknowledges having received. *See id.* (July 28, 2006 letter of Ms. Bauman to GCG stating that her Proof of Claim was based on the 498 shares).

risks to the shareholder. *Sofonia v. Principal Life Ins. Co.*, 465 F.3d 873, 878 (8th Cir. 2006); *Schnorbach v. Fuqua*, 70 F.R.D. 424, 439 (S.D. Ga. 1975). *See also Gelles v. TDA Indus. Inc.*, No. 90 Civ. 5133 (MBM), 1993 WL 275216, at **7-8 (S.D.N.Y. July 16, 1993); *Gurvitz v. Bergman & Co.*, 379 F. Supp. 1283, 1285-1286 (S.D.N.Y. 1974) (finding that the plaintiffs lacked standing under the securities laws, noting that "[a] stock split, in spite of the enthusiasm with which it is generally greeted, is simply the distribution of two or more pieces of papers for one"); Arnold S. Jacobs, *Disclosure and Remedies Under the Securities Laws*, Section 9.28 (2007) ("Stock dividends and stock splits differ from a property dividend since they have no economic significance. Accordingly, they have been held not to be a purchase or sale [under Section 10(b)]").

Moreover, Ms. Bauman sustained no actual damages from the receipt of shares resulting from the stock split. Sustaining actual damages is not only an element of a Section 10(b) claim, *e.g.*, 15 U.S.C. § 78bb(a) (West 2005) (Section 28(a) provides in pertinent part that "no person permitted to maintain a suit for damages under the provisions of this chapter shall recover . . . a total amount in excess of his actual damages"), but also an element of Class membership. As noted, Ms. Bauman originally acquired 498 shares of Uniroyal common stock in February 1993, as a result of the bankruptcy reorganization of certain affiliated entities of Uniroyal. *See* Garr Aff. Ex. B (March 28, 2004 letter from Uniroyal to Ms. Bauman and February 17, 1993 stock certificate). These shares are not claimed to be purchased within the Class period. *See id.* (Bauman Proof of Claim). The 498 shares of Uniroyal common stock that she received in April 2000 due to the stock split were obtained for no consideration. Therefore, since she did not

purchase or acquire these shares at an artificially inflated price, Ms. Bauman suffered no actual loss as a result of the corrective disclosure.[4]

Finally, payment of monies from the Settlement Fund to Ms. Bauman, who is not a member of the Class, would come at the expense of claimants eligible to receive a distribution of funds under the terms of the Stipulation. Such a payment would be unfair and prejudicial to Authorized Claimants. Under these circumstances, payment to Ms. Bauman should be denied.

Accordingly, it is respectfully requested that the Court approve our administrative determination to reject Helen O. Bauman's claim (Claim No. 01000066).

## IV.    UNTIMELY BUT OTHERWISE AUTHORIZED CLAIMS

It is well settled that "[t]he determination whether to allow the participation of late claimants in a class action settlement is essentially an equitable decision within the discretion of the court." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, No. 97-381 (JB), 2000 WL 1023782, at *3 (E.D. Pa. July 10, 2000) (quoting *In Re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 843) (E.D.N.Y. 1995); *see Zients v. LaMorte*, 459 F.2d 628, 629-30 (2d Cir. 1972). It is respectfully submitted that the equities weigh in favor of including late but otherwise valid claims in the distribution, especially since "there is an implicit recognition that late claims should ordinarily be considered in the administration of a settlement." *Crazy Eddie*, 906 F. Supp. at 845 (citing *Manual for Complex Litigation, Third*, § 30.47 (Federal Judicial Center 1995)).

Eighty (80) otherwise valid claims were received after the June 28, 2006 submission deadline. No claim has been rejected because it was received after the initial submission deadline, and we believe no delay has resulted from the acceptance of these claims. It is our

---

[4] Under the Securities Exchange Act of 1934, as the Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1632, 1634 (2005), a victim's out-of-pocket damages are established or measured by two events: 1) the purchase of the security must be at a price inflated by fraud, and 2) the price of the inflated security must later decline when the fraud is revealed, and that decline must be attributable to the disclosure of the fraud. Ms. Bauman cannot satisfy either event, let alone both of them.

belief that when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the cut-off date, but while the claims were still being processed. Accordingly, it is respectfully requested that this Court approve the administrative determination not to reject the 80 valid claims submitted after the June 28, 2006 deadline because of lateness. *See* Garr Aff. ¶ 13.

Notwithstanding the foregoing, there must be a final cut-off date after which no more claims may be accepted in order that there may be a proportional distribution of the Net Settlement Fund. Acceptance of any claim received after the April 5th hearing would necessarily require a delay in the distribution. Accordingly, it is also respectfully requested that this Court enter an order directing that no claim submitted after April 5, 2007, the date of the hearing on the motion for, among other things, approval to distribute the Net Settlement Fund, be accepted for any reason whatsoever. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citations omitted).

## V. DISTRIBUTION OF THE NET SETTLEMENT FUND

Pursuant to the Stipulation and Notice, after payment from the Net Settlement Fund of taxes on income from the fund, Court-approved attorneys' fees and expenses (which have already been paid), and GCG's fees and expenses, the Net Settlement Fund is to be distributed by GCG, under the supervision of Plaintiffs' Lead Counsel, in accordance with the Stipulation and the Plan of Allocation, or such further approval and further orders of the Court as may be necessary or as circumstances may require. Garr Aff. ¶ 21.

Pursuant to the Stipulation, the Net Settlement Fund has been held in escrow by Counsel, as Escrow Agent, pending completion of the claims administration process, approval by the Court of payment of GCG's final fees and expenses, and approval by the Court of GCG's determinations regarding any disputed or late filed claims. *See* Stipulation ¶¶ 7, 18. The Court

has already ordered the parties to perform their respective obligations under the Stipulation, which sets forth that the Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice. *See* Final Judgment ¶ 8. The Plan of Allocation is set forth in the Court-approved Notice. Because GCG has now finished processing all claims, Plaintiffs request the Court to authorize distribution of the Net Settlement Fund (net of GCG's fees and expenses) to eligible Class Members as provided in the Notice sent to the Class in connection with the Settlement. *See* Garr Aff. ¶¶ 20-21.

Moreover, in order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement beyond the amount allocated to them. Accordingly, it is respectfully requested that the Court bar any further claims against the Net Settlement Fund and release and discharge from any and all claims beyond the amount allocated to them arising out of the claims administration, all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration of the Settlement Fund or the Net Settlement Fund.

## VI.   DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE

It may be expected that not all of the payments to be distributed to accepted Class Members will be cashed promptly. In order to encourage Class Members to promptly cash their distributions and to avoid or reduce future expenses relating to unpaid distributions, we propose that all the distribution drafts bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY 180 DAYS AFTER ISSUE."

The Plan of Allocation for the Net Settlement Fund set forth in the Notice provides that payments will be distributed to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement. In order to allow a final distribution of any balance that may remain in the Settlement Fund after the initial distribution, whether by reason of returned funds, tax refunds, interest, uncashed drafts, or otherwise, the Proposed Order Authorizing Distribution also provides that any funds that remain in the Net Settlement Fund one year after the initial distribution shall be re-distributed to Authorized Claimants who have cashed their checks and who would receive at least $10.00 from such re-distribution based on their Recognized Claims after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution.

Plaintiffs respectfully request that the Claims Administrator be authorized to determine, with the approval of Plaintiffs' Lead Counsel, if a re-distribution should be undertaken based on an analysis of the amount remaining in the Net Settlement Fund after one year after the initial distribution. If sufficient funds remain in the Net Settlement Fund to allow for a re-distribution, the Claims Administrator will be directed to distribute the funds remaining in the Net Settlement Fund to Authorized Claimants who have cashed their checks, provided that they would receive at least $10.00 on such re-distribution based on their Recognized Claims after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution.

If no re-distribution is undertaken, or if after six months after a re-distribution any funds shall still remain in the Net Settlement Fund, Plaintiffs request that balance of the Net Settlement Fund be contributed to a non-profit organization of Lead Counsel's choosing.

## VII.    FEES AND EXPENSE REQUEST OF THE CLAIMS ADMINISTRATOR

In the Final Judgment, the Court retained exclusive jurisdiction "over (a) this Settlement's implementation and any award of distribution of the Settlement Fund, including interest earned thereon; and (b) the Settlement Fund's disposition." Final Judgment ¶ 14.

Pursuant to the Final Judgment, it is respectfully requested that the Court award GCG's fees and expenses.

The deadline for submitting claims has passed (the deadline was June 28, 2006). Garr Aff. ¶ 13. GCG has now processed all claims and has determined its final fees and expenses for such processing and for distribution of the fund, which will occur following the issuing of the order requested herein. *Id.* ¶¶ 20, 22.[5] The total amount of GCG's final fees and expenses relating to the Net Settlement Fund, which includes, without limitation, the amounts for giving notice of the Settlement to the Class, processing the claims made on the fund, paying taxes on the fund, and distributing the fund to the claimants, is $166,822.29. *Id.*

Because the work done, and remaining to be done, by GCG was, and is, necessary for the benefit of the Class Members, and because GCG's fees and expenses, as stated in the Garr Affidavit, are reasonable, Plaintiffs request that the Court approve payment of these fees and expenses.

## VIII. THE ORDER FOR DISTRIBUTION OF SETTLEMENT FUND SHOULD BE APPROVED

Plaintiffs submit that the work performed by Plaintiffs' Lead Counsel in connection with the administration of the Settlement, and the work performed by GCG, as explained above, were conducted fairly and in accordance with the terms and provisions of the Stipulation. Accordingly, Plaintiffs have moved for an order: (i) approving the administrative determinations of GCG accepting and rejecting claims submitted herein, including the rejection of the claim submitted by Helen O. Bauman (Claim Number 01000066); (ii) directing payment to GCG for the balance of its fees and expenses incurred and to be incurred in connection with the administration of the Settlement Fund; (iii) directing distribution of the Net Settlement Fund,

---

[5] Although the Court has previously awarded reimbursement of certain expenses, no award has yet been made of GCG's fees or expenses. Garr Aff. ¶ 22.

after deduction of the payments requested herein, to Class Members whose Proofs of Claim have been accepted; (iv) authorizing destruction of paper copies of Proofs of Claim one year after distribution of the Net Settlement Fund, and authorizing destruction of electronic copies of claim records three years after distribution of the Net Settlement Fund; and (v) for such other and further relief as this Court deems appropriate.

## CONCLUSION

WHEREFORE, based upon the Affidavit of Shandarese Garr of GCG, the incorporated memorandum of law contained herein, the supporting declaration of Jeffrey M. Haber, and upon all prior proceedings herein, the undersigned hereby move this Court for an order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (i) approving the administrative determinations of GCG accepting and rejecting claims submitted herein, including the rejection of the claim submitted by Helen O. Bauman (Claim Number 01000066); (ii) directing payment of $166,822.29 out of the Settlement Fund to GCG for its fees and expenses incurred and to be incurred in connection with services performed and to be performed with respect to the administration, taxation, and distribution of the Settlement Fund; (iii) directing distribution of the Net Settlement Fund, after deduction of the payment requested herein, to Class members whose Proof of Claim forms have been accepted; (iv) authorizing destruction of paper copies of Proofs of Claim one year after the initial distribution of the Net Settlement Fund, and authorizing destruction of electronic copies of claim records three years after the initial distribution of the Net Settlement Fund; and (v) for such other and further relief as this Court deems appropriate.

## RULE 3.01 CERTIFICATION

Pursuant to Local Rule 3.01 (g), the undersigned certifies that Defendants, upon consultation, do not oppose the relief requested herein.

Dated: March 30, 2007 Respectfully submitted,

**BARKER, RODEMS & COOK P.A.**

/s/ **Chris A. Barker**
_____

Chris A. Barker, Esq.
Florida Bar No. 885568
400 N. Ashley Dr., Ste. 2100
Tampa, Florida 33602
Telephone: (813) 489-1001
Facsimile: (813) 489-1008
cbarker@barkerrodemsandcook.com

**Liaison Counsel for Lead Plaintiffs**
**and the Settlement Class**

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Jeffrey M. Haber
Joseph R. Seidman, Jr.
10 East 40th Street, 22nd Floor
New York, New York 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

**Lead Counsel for Lead Plaintiffs**
  **and the Settlement Class**

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to registered CM/ECF participants.

**BARKER, RODEMS & COOK, P.A.**

**S/ CHRIS A. BARKER**

CHRIS A. BARKER, ESQUIRE